RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/26/13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CHRISTOPHER C. BELL | DOCKET NO. 1:13-CV-746; SEC. P |
| VERSUS | JUDGE DRELL |
| LT. GOTREAUX, ET AL. | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the Court is the *pro se* complaint of Plaintiff Christopher C. Bell, filed pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1]. Bell is an inmate in the custody of the United States Bureau of Prisons, and he is incarcerated at the Federal Correctional Center in Adelanto, California. He complains that the defendants failed to protect him from violence by other inmates.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

Following conviction and sentencing, Petitioner was incarcerated at the Federal Correctional Institution in Furlong, California. Petitioner alleges that, at FCI Furlong, he was threatened by various gangs because Petitioner had been an

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

informant for the government. Petitioner was housed in the special housing unit until he could be transferred. Petitioner specifically requested not to be transferred to FCI Beaumont or FCI Pollock because of the same gang members at those facilities. [Doc. #1-1, p.2] Nonetheless, Petitioner was transferred to FCI Pollock. Upon Bell's arrival at FCI Pollock, he told officer Gautreaux about the prior threats. The officer reassured Petitioner that he was not going to have any problems at Pollock.

In December 2010, Petitioner informed Officer Gautreaux that he had been threatened by a high-ranking gang member who was housed in the same unit as Bell. [Doc. #1-1, p.3] As a result, that inmate was placed in segregation for two weeks while the matter was investigated. When the inmate was released to general population, he began telling other inmates that Bell was a "rat."

In January 2011, Bell spoke with Unit Manager Rice and Lt. Dixon about resolving an issue with the TVs in his unit[2]. He also informed them that he was still being threatened by the gang members. Bell claims that Defendants "showed favoritism with the Mexican gang members with the TVs which was a direct causal link that also put Bell's life in danger, failed to provide equal protection from inmate Woods and the Mexican gang members that

---

[2]Bell complains that each unit has 6 televisions - one for the Spanish channels, two for sports, two for general viewing, and one for news. He complains that the Mexican gang members took over the TV designated for "news" programming.

assaulted Bell despite his repeated requests for protection." [Doc. #1-1, p.5]  Bell claims that the defendants' failure to secure one TV as the "news" TV for all inmates led to his being assaulted.

On March 17, 2011, the administration had a "town hall" style meeting with Bell's unit regarding the programming assigned to each TV.  The administration failed to "lock" the TVs, though, so the Mexican inmates continued to change the News TV from its designated programing.  The next morning, Bell asked Lt. Patrice to please tell Gautreaux that Bell needed to be in protective custody. Gautreaux declined to intervene.  [Doc. #1-1, p.8]  That same day, Bell was attacked by three to four Mexican gang members.

Petitioner received a disciplinary report for the altercation. On June 6, 2011, Bell was convicted by the hearing officer of violating Code 229, Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution or the Bureau of Prisons, Most Like Code 201, Fighting with Another Person. [Doc. #1-2, p.18]  Bell appealed the disciplinary conviction, but the appeal was denied.  At the Regional Level, the director noted that the DHO considered Bell's statement and video evidence in finding Bell guilty.  He wrote, "You were seen on the video camera swinging your T-shirt at the inmates.  You were seen standing in a fighting stance and swinging closed fists at Hispanic inmates."  The appeal was also denied at the National level on July 20, 2012. [Doc. #1-1, p.22]

Bell also filed administrative remedy requests (#635380 and #638649) regarding the assault/fight. He alleged staff misconduct, deprivation of rights under the Fifth Amendment, and racial discrimination. [Doc. #1-2, p.24-25 & 90]  The ARPs were denied at all levels.  ARP #635380 was denied at the National Level on January 23, 2012 [Doc. #1-2, p.32], and ARP #638649 was denied at the National Level on January 19, 2012 [Doc. #1-1, p.96]. [Doc. #1-1, p. 30, 32]  All responses note that Bell was convicted by the DHO of fighting.

Bell also filed grievances regarding inadequate medical care with regard to his injuries from the assault on March 18, 2011, and a skin rash (ARP #638647, filed May 2, 2011, p.74 & #645795, filed June 26, 2011, p.75).  The reply from the Regional Director states that an injury assessment of March 18, 2011, revealed no injuries and no complaints of pain.[3] [Doc. #1-1, p.78]  The next time Bell sought care was a month later on 4/19/11, at which time he received a prescription for ibuprofen 800mg three times per day for 21 days. Additionally, X-rays were ordered on 4/20/11 and were completed on 5/5/11.  [Doc. #1-2, p.74]  The record also indicates that Plaintiff received creams on a number of occasions to treat a rash.

---

[3]Although there is a medical record that states no injuries and no complaints of pain that day, (BOP Health Services Clinical Encounter 3/18/11, Doc. #1-1, p.67), there is also a medical record from 3/18/11 indicating that Plaintiff received approximately six scalp staples, and had injuries to his arm requiring a staple, and injuries to his shoulder and back (Inmate Injury Assessment and Followup 3/18/11, Doc. #1-1, p.8).

4

He was apparently treated for head and back pain and/or skin rashes on May 4, June 30, July 19, August 5, August 19, 2011. Plaintiff had an abnormal finding at L5, so a request for an MRI was sent to the Utilization Review Committee and was approved by the Regional Office on March 1, 2012. [Doc. #1-1, p.81-82]

During the time in which Bell was housed in segregation following the incident of March 18, 2011, he filed numerous grievances. On July 16, 2011, Bell complained that he was knowingly and intentionally placed in the recreation yard with a Mexican gang member. (ARP #644118, Doc. #1-2, p.34-35 & #648624, Doc. #1-2, p.41). Bell alleges that he was subjected to threats and harassment from the gang member during that time. Plaintiff's ARPs were denied by the warden, denied at the Regional Level, and denied at the National Level on <u>March 8, 2012</u> (ARP #644118) and <u>April 20, 2012</u> (ARP #648624) [Doc. #1-1, p.40, 46][4]

### *Law and Analysis*

I. **Prescribed Claims - Assault**

Plaintiff's primary complaint is that the defendants failed to

---

[4] Petitioner submitted copies of numerous other grievances and appeals filed regarding other incidents and issues not directly related to the assault of March 18, 2011: (1) August 6, 2011 - a complaint about conditions of confinement and cleaning supplies (ARP #652116)[Doc. #1-2, p.53]; (2) August 9, 2011 - complaint about medical care (ARP #652112) [Doc. #1-2, p.84]; (3) August 14, 2011 - claim regarding placement in a range with a gang member (#ARP 653423)[Doc. #1-2, p.60]; (4) August 24, 2011 - a claim that staff is impeding access to ARP forms (ARP #643281)[Doc. #1-2, p.51]; (5) August 29, 2011 - a complaint about conditions of confinement (ARP #655284) [Doc. #1-2, p.61] claim of improper medical with regard to skin condition in groin area (ARP# 645793)[Doc. #1-2, p.76]; and (6) a complaint of staff misconduct in bringing contraband into FCI Pollock (ARP #655284).

protect him from harm inflicted on March 18, 2011, by inmates that are part of a Mexican gang. District courts are authorized to dismiss a complaint as frivolous when "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994); Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

There is no federal statute of limitations. Accordingly, the forum state's statute of limitations for general personal injuries is used in Bivens claims. See Lopez-Vences v. Payne, 74 Fed. Appx. 398 (5th Cir. 2003). In Louisiana, that limitations period is one year. However, federal law is used to determine when a cause of action accrues. Id. "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." Piotrowski, 51 F.3d at 516, quoting Vigman v. Community National Bank and Trust Co., 635 F.2d 455, 459 (5th Cir. 1981). Plaintiff had knowledge of his claim on the date of the attack, March 18, 2011. Thus, he generally had until one year later to file suit – March 19, 2012. Plaintiff's lawsuit was not filed until April 2013, well past the expiration of the one year limitations period.

However, equitable tolling principles apply to civil rights cases filed under Bivens. See Rotella v. Pederson, 144 F.3d 892, 897 (5th Cir. 1998). Thus, Plaintiff is entitled to equitable tolling for the time spent properly exhausting the BOP administrative remedies. See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002) (holding that because the PLRA requires a prisoner to exhaust his administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhausts the remedies); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999) (holding that the statute of limitations applicable to a civil rights complaint should be tolled while the prisoner exhausts his administrative remedies).

Plaintiff submitted two administrative remedies (ARP #635380 and ARP #638649) regarding the attack. In those forms, he alleged staff misconduct, deprivation of rights under the Fifth Amendment, and racial discrimination. [Doc. #1-2, p.24-25 & 90] The ARPs were denied at all levels. ARP #638649 was denied at the National Level on January 19, 2012 [Doc. #1-1, p.96], and ARP #635380 was denied at the National Level on January 23, 2012 [Doc. #1-2, p.32] [Doc. #1-1, p. 30, 32] Thus, Plaintiff would have, at the latest, one year from January 23, 2012, to file suit, or until January 23, 2013. Plaintiff's suit was not filed until April 2013. Therefore, his failure to protect claims regarding the March 18, 2011 incident are prescribed.

7

Alternatively, and to the extent that Bell lost any "good time credit" as a result of the disciplinary conviction, Plaintiff's claim would also be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a civil rights plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable. The ruling was extended to disciplinary convictions in Edwards v. Balisok, 520 U.S. 641 (1997). "A 'conviction,' for purposes of Heck, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits." Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998). Claims barred by Heck are legally frivolous. See Hamilton v. Lyons, 74 F.3d 99, 102 (5th Cir. 1996).

It is clear that Plaintiff's disciplinary conviction was not overturned. He administratively appealed the conviction, but was denied relief at each step, and he has not filed a petition for writ of habeas corpus in this Court. Therefore, even if Bell's

complaint was timely, he would likely be barred from recovery by Heck and Balisok.

## II. Medical Care

Plaintiff complains about inadequate medical care with regard to a fungal infection or rash, injuries sustained in the attack of March 18, 2013, and continued back pain. The record submitted by Plaintiff contains inconsistent records regarding the examinations of 3/18/11, the date of the attack. One evaluation form shows that Plaintiff received multiple stab wounds requiring medical staples. [Doc. #1-2, p.9] Another report states that Plaintiff suffered no injury at all. [Doc. #1-2, p.67]

Nonetheless, Plaintiff was treated again on April 20, 2011. He received a prescription for 800mg ibuprofen, three times a day for twenty-one days. [Doc. #1-2, p.70-72] Additionally, x-rays of the spine and skull were ordered. [Doc. #1-2, p.72] On May 2, 2011, Plaintiff filed an ARP complaining that the x-rays had not been taken and he was still suffering from severe low back and head pain. [Doc. #1-2, p.74] On May 5, 2011, the x-rays were performed. [Doc. #1-2, p.74] The results were negative and showed normal findings. Plaintiff also received treatment for a fungal rash on May 4, 2011, June 30, 2011, and July 19, 2011. On August 5, 2011, Plaintiff complained of back pain to Officer Ma'at, who contacted Mr. Vasquez, on Plaintiff's behalf. Vasquez examined Bell and provided him with medication. [Doc. #1-2, p.84] A few

9

days later, on August 8, 2011, Plaintiff received two steroid injections in an effort to relieve some of his pain. Plaintiff alleges that the injections did not provide relief. Thus, on August 9, 2011, Plaintiff submitted another ARP complain about the medical care he was receiving. [Doc. #1-2, p.84]

On August 19, 2011, Plaintiff had a follow-up appointment regarding back pain. His prescription was renewed, and he was instructed to do lower back exercises. On April 20, 2012, Plaintiff had an MRI of the L spine, and Bell was diagnosed with chronic low back pain secondary to L5 Spondylolysis with minimal anterolisthesis of L5 and Morbid Obesity. On October 30, 2012, Plaintiff was evaluated at an outside pain clinic where he received another steroid injection as well as Gabapentin.

First, any claims by Plaintiff regarding medical care received while housed at FCI Three Rivers must be filed in the District Court encompassing that facility. This Court does not have jurisdiction over those defendants.

Second, it is evident from the record that Plaintiff received regular and adequate medical treatment. He admittedly received medical treatment following the incident on March 18, 2011. He has received a considerable amount of treatment, including steroid injections, prescription medications, x-rays, an MRI, and treatment by BOP and non-BOP medical providers.

In <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), the Supreme

Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. §1983 for inadequate medical care if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. The plaintiff must allege deliberate indifference by stating facts that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. See Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Bell has not alleged facts indicating deliberate indifference. He has not provided any allegations of instances in which he was refused medical care or that his complaints were ever ignored. He has presented no allegations of a wanton disregard by the medical providers or other defendants at Pollock. Nor has he alleged any physical injury as a result of the alleged deprivation of adequate care. See §1997e(e); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). To the extent that Plaintiff disagrees with the course of treatment, his claim also fails. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997), citing Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977).

### III. Personal Property

Plaintiff complains about lost or stolen personal property. Plaintiff also seeks damages because a defendant threw away his papers and Bibles. The Due Process Clause of the Fourteenth

Amendment provides "nor shall any State deprive any person of ... property, without due process of law." U.S. Constitution, Amendment XIV. However, under the Parratt/Hudson doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy. See Parratt v. Taylor, 451 U.S. 527, 544 (1981); Hudson v. Palmer, 468 U.S. 517 (1984). Even in instances where an intentional deprivation occurs, if an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. Hudson v. Palmer, 468 U.S. 517 (1984). Louisiana law provides Plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. La. Civil Code, Article 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code, provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. See Charbonnet v. Lee, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205 (1992). Plaintiff's claim regarding any lost property is barred by the *Parratt/Hudson* doctrine.

## IV. Conditions of Confinement

Plaintiff complains that he was forced to live in unsanitary conditions in the SHU at Pollock in 2011. He claims that for some days in August 2011, he was in need of boxers, soap, shampoo,

toothpaste, and cleaning supplies. An Eighth Amendment claim has two required components. See <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The deprivation alleged must be sufficiently serious. <u>See id.</u> "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. <u>Id.</u> (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). Also, the prison official must have acted with a sufficiently culpable state of mind. <u>See id.</u>; <u>Farmer v. Brennan</u>, 511 U.S. 825, 838 (1994). In prison conditions of confinement cases, that state of mind is deliberate indifference, which the Supreme Court has defined as knowing of and disregarding an excessive risk to inmate health or safety. <u>See Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

 The National Inmate Appeals response to Plaintiff's grievance states that cell cleaning in the SHU is done weekly in all cells and under direct staff supervision; inmates are not allowed to have cleaning supplies in their cells in the SHU. Additionally, government issued hygiene products and clothing are issued, but specific sizes of clothing may be limited at times. [Doc. #1-2, p.56, 58] Plaintiff has not presented more than a conclusory allegation that the defendants acted with deliberate indifference with regard to his initial confinement in the SHU. Moreover, a Plaintiff cannot recover compensatory damages for emotional injury without the prior showing of a physical injury. 42 U.S.C.A. §1997e

13

("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.") Plaintiff suffered no injury from the delay in obtaining hygiene products.

### *Conclusion*

Therefore, **IT IS RECOMMENDED** that Plaintiff's claims regarding conditions of confinement and medical care at FCI Three Rivers be **DISMISSED WITHOUT PREJUDICE,** as the facts giving rise to those claims did not occur in this district; also, the defendants from FCI Three Rivers are not located in this district. **IT IS RECOMMENDED** that the rest of Bell's claims be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief can be granted pursuant to 28 U.S.C. §1915(e)(2)(B) and 1915A.

### *Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely

objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 26th day of July, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE