UNITED STATES DISTRICT COURT

b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHRISTOPHER C. BELL, SR.,<br>Plaintiff | CIVIL ACTION<br>SECTION "P"<br>1:13-CV-0746 |
| VERSUS | |
| SIS LT. GOTREAUX, et al.,<br>Defendants | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before this court is a complaint filed pursuant to <u>Bivens v.</u> <u>Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971),[1] on April 8, 2013, in forma pauperis, by pro se plaintiff Christopher C. Bell ("Bell"), Sr. (Doc. 1). The remaining defendants are SIS Gotreaux, Lt. Dixon, and Unit Manager Rice (Docs. 11, 14). Bell's sole remaining claim is that, while he was incarcerated in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock") on March 17, 2011, defendants failed to protect him from an assault by other inmates (Docs. 11, 14). For relief, Bell asks for a jury trial, a transfer to another prison, and monetary damages, including punitive damages (Doc. 1).

---

[1] Under <u>Bivens</u>, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. <u>Channer v. Hall</u>, 112 F.3d 214, 216 (5th Cir. 1997). Also <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 486, 114 S.Ct. 996, 1006 (1994); <u>Whitley v. Hunt</u>, 158 F.3d 882 885 (5th Cir. 1998).

Defendants answered the complaint (Doc. 31) and filed a motion for summary judgment with a statement of undisputed facts and affidavits (Doc. 33). Bell filed motions for a stay, an extension of time to respond, and to compel discovery (Docs. 36, 47) which were denied (Doc. 46), and has not otherwise responded to the motion for summary judgment. Defendants' motion for summary judgment is now before the court for disposition.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of

2

material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Failure to Protect Claim

Bell contends that, when he was transferred to FCI-Pollock in

3

2010, he told SIS Gotreaux that he had been threatened by two gangs, the Vice Lords and the Gangster Disciples, while he was confined in FCI-Herlong, California because he had testified in court against gang members, he had been placed in the SHU[2] at FCI-Herlong for protection, and that the gangs had promised to find him and kill him, no matter where he was transferred to.

Bell contends that, while he was in FCI-Pollock in about December 2010, he told Lt. Gotreaux that he had been threatened by inmate Woods, who was a member of one of the Gangster Disciples (Doc. 1).   Inmate Woods told other inmates that Bell was an informant (Doc. 1).  Bell reported Woods statements and threats to his education supervisor, Davis, who immediately reported it to SIS Gotreaux (Doc. 1).  Bell also alleges that he told Unit Manager Rice and Lt. Dixon about the threats he had received from inmate Woods (Doc. 1).  Bell contends that each defendant knew that Bell was an informant within the prison (Doc. 1).

Bell contends that, on March 18, 2011, he sent three letters to Lt. Gotreaux requesting protection and notifying Lt. Gotreaux of an impending "war" within the prison between Hispanic and Black inmates over control of the televisions in his housing unit (Doc. 1).  A "Town Hall Meeting" had been held on March 17, 2011 to try to work out the matter between the inmates (Doc. 1); defendants submitted the minutes of that meeting (Doc. 33).  Bell further

---

[2] Segregated Housing Unit.

contends that, later on March 18, 2011, he was stabbed and beaten by three other inmates who were members of a Mexican gang (Doc. 1, Ex. p. 8/96).

Bell alleges that defendants were aware of the threat to his safety and failed to take any steps to protect him.

1.

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the

official actually knew of the risk of harm to the inmate.  It is insufficient to show solely that the official should have known of the risk.  The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.  Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety.  Farmer, 114 S.Ct. at 1981-82.  Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008).  However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.  Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite.  Farmer, 114 S.Ct. at 1984-1985.

6

2.

Defendants contend, in their motion for summary judgment, that Bell was injured during a fight which arose our of a disagreement between Hispanic inmates and Black inmates over television programming in Bell's housing unit.  Defendants contend Bell was acting as negotiator between the two factions, and that the interviews of the inmates after the incident established that the cause of the fight was the disagreement over the television programming and had nothing to do with Bell's status as an informant.

In their uncontested statement of undisputed facts and the affidavits of SIS Gotreaux, Lt. Dixon, and Rice, defendants show that Gotreaux was employed as a Special Investigative Supervisor Lieutenant at FCI-Pollock and Dixon was a Lieutenant at FCI-Pollock in March 2011, when Bell was assaulted by several Hispanic inmates during a fight between Black and Hispanic inmates in Bell's housing unit over the television programming (Doc. 33).  Defendants further show in their statement of undisputed facts that Bell did not notify any FCI-Pollock staff members of threats to his safety by any of the Hispanic inmates prior to the incident, and that neither Gotreaux nor Dixon recalled Bell or other staff members speaking with them about threats to Bell's safety and did not recall receiving letters from Bell stating that Woods said Bell was a snitch and asking for protection from other inmates (Doc. 33).

7

Defendants also show in their statement of undisputed facts that there are no SIS investigations or SIS files with any documentation or information alleging Bell's life was in danger from inmate Woods or Hispanic inmates prior this the March 18, 2011 assault, and that if Bell had notified Gotreaux or Dixon that his life was in danger there would be an SIS investigation or file containing that information (Doc. 33).

Defendants further show in their statement of undisputed facts that Rice was previously a Unit Manager at FCI-Pollock but was not at work on March 19, 2011, had no knowledge of danger to Bell before the incident on March 18, 2011, and had no personal knowledge of Bell's status as a government informant (Doc. 33). Defendants show in their statement of undisputed facts that, if Rice had received information that Bell was threatened by other inmates, he would have immediately notified the Correctional Services Department (Doc. 33).

Defendants submitted medical records which show that he was seriously injured in the fight on March 18, 2011 (Doc. 1, Ex. p. 8/96, because of the fight, Bell required staples in his scalp (Doc. 33).

Defendants' uncontested submissions show that they were all unaware that Bell's safety was in danger prior to the March 18, 2011 fight and that they were unaware that inmate Woods had told other inmates that Bell is a snitch.   Defendants' uncontested

8

submissions also establish that Rice was unaware that Bell was a snitch and was not at work on March 18, 2011.

More to the point, it is clear that Bell was not injured by members of the gangs who had previously threatened him, but was instead assaulted by Hispanic inmates over an incident completely unrelated to Bell's activities as an informant.  The minutes of the Town Hall Meeting in Bell's housing unit on March 17, 2011 (attached to Rice's affidavit, Doc. 33, Ex.) show that rules were established for the televisions; that tends to indicate that defendants had no reason to anticipate a subsequent fight in the housing unit over the televisions.

Therefore, Bell failed to show that defendants were aware of danger to Bell's safety from Hispanic inmates in his housing unit prior to the assault on March 18, 2011.  Bell has not carried his burden of proving his claim that defendants' failed to protect him from that assault.

Since defendants have established through their uncontested submissions that there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED and that Bell's remaining claims be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 20th day of January 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE